## GOFF v. AVENT

### [In Banc. No. 21015.[

1. QUIETING TITLE. *Complainant must show title in' self independently of defects in defendant's title.*

   The complaint in a suit in equity to cancel clouds on the title to real property, under section 550, Code of 1906 (section 307, Hemingway's Code), must show title in himself independently of defects in the defendant's title.

2. BOUNDARIES. *Description by government sectional numbers conveys only property situated within such sections.*

   Where land is described in a deed by sectional numbers according to the government's survey, the land thereby conveyed is that only which is situated within the designated sections as surveyed and platted by the government; the original corners and lines thereof established by the government being their true and only boundaries.

3. DEEDS. *Intent of parties governs where language is to be construed by court.*

   When the meaning of language contained in a deed is to be determined by the court, the intent of the parties, expressed in the words they have used, must govern.

4. ADVERSE POSSESSION. *Allegation of possession for a long number of years insufficient.*

   An allegation in a bill of complaint that the complainant entered into and remained in possession of the land in controversy "for a long number of years" does not disclose that he continued in possession for the length of time required to obtain title by adverse possession.

APPEAL from Chancery Court of 'George County.

HON. W. M. DENNY, JR., Chancellor.

Suit by W. H. Goff against R. C. Avent to remove cloud on title. From an unfavorable decree, complainant appeals. Affirmed and remanded.

*Oscar Backstrom* and *White & Ford* for appellant.

We contend that whatever description is used in a deed, if the land is pointed out with such particularity of designation, that a surveyor can take the description given in the deed and locate the land, the description is good. To support this view, we submit the following:

"Wherever the description given in a deed is imperfect, yet sufficient to point inquiry to the true locality and boundary of the land, then the deed is not void for uncertainty, but the defect may be cured by the aid of parol evidence in giving identity to the premises intended to be conveyed. *Jenkins* v. *Bodley,* Sm. & M., ch. 338; *Bingaman* v. *Haytt,* Sm. & M., ch. 437."

"A conveyance of land by a general designation, capable of being made certain as the "Hill tract, one hundred and sixty acres" is not void for uncertainty; it may be shown by extrinsic evidence what land was intended to be embraced. *Tucker* v. *Field,* 31 Miss. 191."

"A description of land in a deed as the 'E. Pt. S. W. 1-4, Sec. 38, T. 1, R. 1, W., Twenty acres' is good. The twenty acres may be laid off on the east side by a straight line from north to south, across the quarter section. *McCready* v. *Lansdale,* 58 Miss. 877. To the same effect, *Towers* v. *Chambers,* 53 Miss. 259; *Enochs* v. *Miller,* 60 Miss., 19; *Goodbar* v. *Lunn,* 61 Miss., 618; *Tierney* v. *Brown,* 65 Miss. 563, 5 So. 104, Am. St. 679."

"A description in a deed of land by reference to a well-known general designation, by which the boundaries may be made practically certain, is sufficient, although resort to extrinsic evidence be necessary to ascertain definitely what is embraced. *Stewart* v. *Cage,* 59 Miss. 558; *Kyle* v. *Rhodes,* 71 Miss. 487, 15 So. 40."

"If in a deed certain particulars are once sufficiently ascertained, designating the thing granted, if false or mistaken descriptive circumstances are added, they will not frustrate the deed. Hence, where, a deed otherwise su-

fficiently described the land granted, but erroneously added, that it was marked on a certain map as "swamp land" it was held that the mistaken reference did not vitiate the deed. *Morton* v. *Jackson,* 1 S. M., 494, 40 Am. Dec 107n; *McRaven v. McGuire,* 9 S. & M. 34."

"Superfluous words in a deed will be rejected, if by considering them a description otherwise good will be rendered uncertain. Thus, a conveyance of lots 33, 34, 47, and 48, square 15, Vick's enlargement in Vicksburg" is good, though the land is in square 14, the lots in the entire addition being numbered consecutively from 1 to 70, and it being impossible for the lots mentioned to be in square 15. *Pegram* v. *Newman,* 54 Miss. 612."

"Where, north of a street which crosses a railroad, there is a parallel street, extending only to the railroad on one side, and the owner of unplatted land on the other side, sells a lot describing it as bounded by the two streets the parties treating the unopened street as being extended across the railroad, parallel with the other street, there being no doubt as to their intention, the street, when so extended, will be the northern boundary of the lot, although the distance between the streets is only two hundred and fifty-eight feet, while the deed calls for three hundred feet as the length of the lot. *Potts* v. *Canton Warehouse Co.,* 70 Miss. 462, 12 So. 147."

"As the object of the registry acts is to enable purchasers to obtain accurate information respecting the title to any particular piece of land, it is essential to the accomplishment of this object that the description of the land in the conveyance should be reasonably certain and sufficient to enable subsequent purchasers to identify the premises intended to be conveyed. In many cases the description is so inaccurate or misleading that courts have no hesitancy in declaring it in sufficient to charge purchasers with constructive notice. In others while the description is erroneous yet it may be expressed in such a manner, or may be connected with such attendant circum-

stances, that a purchaser is deemed to be put upon inquiry, and if he fails to prosecute this inquiry, he is chargeable with all the notice he might have obtained had he done so. We call attention in the following sections to instances in which these principles have applied. Devlin on Deeds, section 650, page 667."

"In a conveyance filed for record, the land was described as the 'south half of the southeast quarter of section 15, town. 8. north, range 43 east, of the fourth principal meridian.' The correct description should have been: 'The south half of the southeast quarter of section 15 in town, 43 north, range 8 east, of the third principal meridian' the numbers of the township and range having been transposed and there being no land in the county corresponding to the description in the deed. It was held, however, that notwithstanding the misdescription, the registry laws were applicable, and that a purchaser was put upon inquiry and charged with knowledge of the conveyance of the premises." Devlin on Deeds, section 652, page 670.

"If the premises are described by an impossible sectional number, in the record of the deed, it follows in accordance with the foregoing decisions, it is sufficient to put a purchaser from the same grantor upon inquiry. He might by pursuing such inquiry, obtain actual knowledge of the prior deed. 'Let it be granted,' said Mr. Justice Breese, 'that it was inaccurately recorded, the point we then make is, the record disclosed the fact that a deed for a tract of land with an impossible sectional number, in township thirty-four north range three east, of the third principal meridian, was recorded, the name of the parties thereto distinctly appearing. Now a party dealing with the grantor in such a deed would have his attention arrested by this singular description, and he would naturally be led to inquiry. The record afforded him abundant data, which properly used and diligently inquired into,

would inevitably lead him to the fact of the existence of the Deed.' '' 1 Devlin on Deeds, section 654, page 672.

''A deed is not void for uncertainty because there may be errors or an inconsistency in some of the particulars. If a surveyor by applying the rules of surveying can locate the land, the description is sufficient, and generally the rule may be stated to be that the deed will be sustained if it is possible from the whole description to ascertain and identify the land intended to be conveyed.'' 2 Devlin on Deeds, section 1012, page 320.

''Where the tract of land conveyed is described only by the name of the township or the subdivision of the township, such a tract is a subdivision according to the United States survey, the deed is considered as referring to the line of the survey made by the United States and the monuments then erected.'' 2 Devlin on Deeds, section 1032 page 349.

''Generally therefore any description is sufficient by which the identity of the premises can be established. A conveyence is also good, if the description can be made certain within the terms of the instrument for the maxim, *id certum est quod certum reddi potest* applies, extrinsic facts pointed out in the description may also be resorted to to ascertain the land conveyed, and the property may be identified by extrinsic evidence, as in the case of records of the county, where the land is situated.'' 13 Cyc., page 544.

''If a surveyor can locate the land from the description, it is sufficient.'' *Campbell* v. *Carruth,* 32 Fla. 264, 13 So. 432; *Smiley* v. *Fries,* 104 Ill., 416; *Pennington* v. *Flock,* 93 Ind. 378; *Oxford* v. *White,* 95 N. C. 525. ''If the description affords sufficient means of ascertaining and identifying the land intended to be conveyed, it is sufficient.'' *Armijo* v. *New Mexico Town Co.,* 3 N. M. 244 5 Pac. 709.

''Uncertainty is immaterial if the premises can be identified, by means of the description in connection with

other conveyances, plats, lines, or records well known in the neighborhood or of file in public offices. *Pittsburgh etc. R. C. O.* v. *Beck,* 152 Ind. 421, 53 N. E. 439.''

In the court below great reliance was placed by appellee on the case of *Dedeaux* v. *Bayou De Lisle Lumber Company,* 112 Miss. 325. We fail to apprehend, however, what applicability that case can have to the set of facts disclosed by this record. In the *Dedeaux case,* appellant had recorded title to a Spanish grant known as section 38. Appellee there claimed title to the same land by a tax sale conveying lands in sections 25 and 36, and by adverse possession of section 38. The court held that the tax deed to lands in 25 and 36, could not be color of title to lands in section 38, however, it would have been otherwise, we confidently submit, if it had been shown that sections 36 and 25 were identical with section 38. Here it is admitted by the demurrer that the Daniel Green confirmation is identical with certain parts of sections 22, 23, and 27.

The demurrer also takes the position that the deeds under which appellant claims do not constitute color of title so as to afford basis for a claim to the whole tract by occupancy of a party. This point was not argued in the court below, but we do not know what reliance will be placed on it here. To anticipate the point, if made by appellee here, we submit that appellant's deeds afford ample color of title. It is objected by appellee that the deed from McInnis to Shepherd was not acknowledged, and therefore not entitled to record. In this he is mistaken, as a perfectly good acknowledgment of said deed appears at page 16, this record. Like objection is made to the deed from Shepherd to Cochran and Goff. The point is not well taken, we submit, but if it was, that would be immaterial, as an unacknowledged or unrecorded deed may be color, of title for adverse possession. That this is so, see: 2 Corpus. Juris., page 181, sec. 346: ''It is very generally

held that a deed which purports to convey title will give color of title, although it has not been acknowledged, or although it be defectively acknowledged.''

In conclusion we submit that this case should be reversed, and appellee required to answer the bill of complaint.

*O. F. Moss*, for appellee.

As stated by appellant, this suit is brought under section 550 of the Mississippi Code of 1906 (section 307 of Hemingway's Code), and seeks cancellation of appellee's claim to said land as a cloud on appellant's title. We desire first to call the attention of the court to appellant's peculiar tactics. It seems that he is trying to rely more on appellee's weak title than on the strength of his own. To be perfectly frank with the court, at the present stage of the proceedings there is absolutely nothing in the record to show whether appellees claim is weak or strong, no answer to said amended bill having yet been filed, although appellant harps much on appellee's weak title even more so than he does on the fairness of his own title. The complainant must show the entire fairness of his own title. *Boyd* v. *Thornton*, 13 Sm. & M. 338. The complainant must show himself to be the owner in law or equity of the subject-matter in dispute. *Hart* v. *Blumfield*, 66 Miss. 100, 5 So. 620.

It is not necessary to set out particularly defendant's title, which it is so sought to cancel. *Wright* v. *Lauderdale County*, 71 Miss. 800, 15 So. 116. The bill need not show the defects in the defendant's title, which it is so sought to cancel. *Wright* v. *Lauderdale County*, 71 Miss. 800, 15 So. 116. The bill need not show the defects in the defendant's claim although it shows the instrument under which he claims. *Wedberger* v. *Puckett*, 78 Miss. 650, 29 So. 393. Under this section complainant must show a perfect legal or equitable title independently of defects in defendant's

title. *Jones* v. *Rodgers*, 85 Miss. 802, 38 So. 742; *Stevens Lumber Co.* v. *Hughes*, 38 So. 769.

In case suit is brought in a court of chancery to remove the clouds on the title to real estate, the complainant must have a perfect legal and equitable title or such court will not grant relief. *Toulmin* v. *Heidelberg*, 32 Miss. 268; *Kerr* v. *Freeman*, 33 Miss. 292; *Huntington* v. *Allen*, 44 Miss. 654; *Adams* v. *Harris*, 47 Miss. 144. We submit, therefore, that under the authorities above cited the sole and only question now before the court is as to whether said amended bill of complaint shows on its face a perfect legal or equitable title in appellant to the land in controversy, independent of defendant's claim, and this is the question that we shall now attempt to discuss.

The demurrer shown on pages 25, 26 and 27 of the record attacks the bill on sixteen separate and distinct grounds, each and every one of which, we submit, are well taken. We take it that it is useless for us to repeat the demurrer here, as it speaks for itself, and we will consider together as much as is possible, the questions raised by the demurrer.

The intention of the parties will not control the plain and unambiguous terms of the deed as against third persons. 18 C. J. 278, and authorities there cited. The court takes judicial notice of the United States Government survey, and the legal subdivision therein. *Muse* v. *Richards*, 70 Miss. 581, 12 So. 821; *Shivers* v. *Insurance Company*, 55 So. 965. But complainant in the court below makes the government survey a part of his amended bill, brings it here as a part of the record, and it is agreed by both parties to this suit that it is correct, and that each and every section and subdivision thereof is correct and bounded as shown by said plat or survey.

Even the United States cannot by subsequent survey change the survey of a Spanish grant. *Doe* v. *King*, 3 H. 125. Still appellant comes to this court with the absurd proposition, that private parties, by mere misnomers and

misdescriptions in their deeds, can change the original government survey and bind third parties thereby; but the most surprising thing of all is that appellant seems to think that such a rediculous argument will have weight with an intelligent court.

Appellant contends that if a surveyor can locate the land as described in the deed, the description is good. We certainly agree with him in this contention, but suppose we should send a surveyor to locate the land described in the deed from Sheppard and wife to Cochran and Goff. We submit that if the surveyor knew his business, he would not find and locate any of that land in Daniels Green Conformation No. 42, in said township and range. He would certainly go to sections 27 and 23, in said township and range, and there locate the land, which would be land wholly different from the land appellant is claiming in this suit.

We cannot see for the life of us what application the authorities cited by appellant have to the present case, appellant has actually cited the case of *Trager* v. *Jenkins,* 23 So. 424, and if we can read, the *Trager case* bears out appellee's contention exactly. In that case the real owner of the land had a tax receipt for the taxes for the year for which the land was sold describing it as being in a Spanish grant, and irregular section, while the tax deed described the land as being in regular section 2. The court held that the description as being in the Spanish grant was the best description and would prevail over the description in the tax deed, or in other words the description in the tax deed as being in a regular section was no description at all. This is the very contention that we are making in this case, that is, that the description in the Sheppard deed to Cochran and Goff certainly cannot be construed so as to cover any land in the Daniel Green Conformation No. 42, Township 1 South, Range 8 West, George county.

We submit that the case of *Dedeaux* v. *Bayou DeLisle Lumber Company*, 73 So. 53, is directly in point. In that case appellee held tax deeds to parts of two regular sections of land, which, had the regular government survey not been broken into by Spanish grant section No. 38 would have covered said claim sec. No. 38, but this court in the *Dedeaux case* held that the deeds of appellee were not even color of title to said Spanish grant Claim No. 38. By the same reasoning we must conclude that none of the deeds through which appellant in the present case claims are even color of title to any part of the land described as the Daniel Green Conformation No. 42, which embraces the land here in question.

We, therefore, respectfully submit that the decree of the lower court ought to be affirmed, and the case remanded, with leave to appellant to file an amended bill, if he should see fit to do so, for he has certainly failed to make out a case by his second amended bill now, before the court.

SMITH, C. J., delivered the opinion of the court.

This is an appeal to settle the principles of the case from a decree overruling demurrer to a bill of complaint. The suit was instituted under section 550, Code of 1906 (section 307. Hemingway's Code), by the appellant. who will hereinafter be designated as the complainant, against the appellee, who will hereinafter be designated as the defendant, to cancel the claim of the defendant to certain land in section 42, township 1 south, range 8 west, as a cloud on complainant's title thereto.

It appears from the bill of complaint that when the territory now composing the county of George was acquired by the United States government a number of persons occupied various tracts of land therein, claiming ownership thereto, which claims were confirmed by the government. When the territory was surveyed and platted by the gov-

ernment, these tracts were set apart to the claimants, and each was designated on the township plats by a sectional number. Among such tracts of land was one situated in what is now George county, embracing the land now in controversy, and claimed by Daniel Green. The township in which this land is situated contained a number of such tracts, each of which is shown on the township plat as a separate section, resulting in the township being divided into 47 instead of 36 sections, the one set apart to Daniel Green being No. 42. It appears from the township plat, filed as an exhibit to the bill, that section 42 would have embraced and coincided with the Northwest quarter of section 27, the South half of section 22, and the Southwest quarter of section 23 if the township had been divided by the government surveyors into 36 regular sections. Sections 22, 23, and 27 were surveyed and designated on the government plat, but are only a fractional part of what they would have been had the township been divided into 36 regular sections.

Complainant deraigns his title through the following deeds: Daniel Green to Daniel McInnis; Daniel McInnis to John H. Sheppard; John H. Sheppard to H. C. Cochran and W. H. Goff; H. C. Cochran to W. H. Goff. The deed from McInnis to Sheppard, instead of describing the land as section 42, township 1, range 8 west, as it should have done, described it as:

"The northwest quarter of section twenty-seven (27), and the south half of section twenty-two (22) and the southwest quarter of section twenty-three (23) it being in township No. one (1) south and range No. eight (8) west, containing by estimate six hundred and forty (640) acres more or less."

The description in the deed from Sheppard to Cochran and Goff is:

"Northwest quarter section twenty-seven (27), the southwest quarter of southwest quarter and east half of west half of southwest quarter of section twenty-two,

township one south, range eight west, containing five hun-dred and ninety acres.''

The description in the deed from Cochran to Goff is as follows:

''Commencing at the one-half mile post between sec-tions 22 and 21; thence run east 10 chains to place of be ginning; thence continue due east along east and west cen-ter line 110.00 chains; thence south 26.66 chains; thence west 110.00 chains; thence north 26.66 chains to place of beginning containing 293¼ acres more or less, land being and lying in section 22 and 23 T. 1 S., R. 8 W.''

The bill alleges that it was the custom of the land owners in that vicinity to describe the land situated in the irregular sections set apart by the government to the original claimants as hereinbefore set forth by what would have been the proper description thereof according to the government survey had the townships been divided into 36 regular sections, and that that was the plan adopt-ed by the parties to these deeds, the grantors intending thereby to convey the land that would have been thereby described had the township been divided in 36 regular sections.

The bill further alleges that McInnis and Sheppard went into possession of the land in controversy under the deeds to them and continued to hold it, claiming it as their own, until conveyed by them, and that Cochran and Goff, upon the execution of the deed to them by Sheppard ''entered into the actual, open, exclusive, notorious, con-tinuous, and undisputed possession of said land, claiming it against all the world, exercising every class and kind of ownership, use, and occupancy of which the same was acceptable, and personally so remained in possession for a long number of years.''

The bill also set forth the instruments under which the complainant understands that the defendant claims title to the land and pointed out the alleged defects therein.

7-122 Miss.

We are not now called on to determine the validity of the defendant's claim of title; for, as will hereinafter appear, the complainant has failed to show any title in himself, and this he must do before he can question the title of the defendant.

The land in controversy is not embraced in the description of the land conveyed in the deeds through which the complainant claims; for, where land is described in a conveyance by sectional numbers according to the government's survey thereof, the land thereby conveyed is that only which is situated within the designated sections as surveyed and platted by the government; the original corners and lines thereof established by the government being their true and only boundaries. That the parties to these deeds may have intended thereby to convey land that would have been included in the designated sections had they been of the regulation size can avail the complainant nothing; for when the meaning of language is to be determined by the court the intent of the parties, expressed in the words they have used, must govern.

The plaintiff's claim of title by adverse possession is not sustained by the allegation of his bill, for it does not appear therefrom that he remained in possession of the land for the required length of time, the allegation being simply that he "remained in possession for a long number of years." According to the allegation of the bill the title to the land was acquired by John H. Sheppard by adverse possession, and has not been divested out of him.

*Affirmed and remanded*