FIGEUROA *v.* LEMON, et al.

No. 39459          January 24, 1955          77 So. 2d 320

*Amy Burkett*, Ocean Springs, for appellant.

807

*Heidelberg & Watts,* Pascagoula, for appellees.

LEE, J.

Mrs. Iris D. Figeuroa filed her bill in the Chancery Court of Jackson County to confirm her asserted title to certain lots in the town of Ocean Springs. She claimed through a forfeited land patent from the State. She named, as defendants, the State and Eleanor Bradford Lemon and husband, J. K. Lemon. By their answers, the defendants denied that the complainant was entitled to any relief. The Lemons made their answer a cross bill, and prayed for confirmation of their title as against the complainant. After hearing all of the evidence, the Court dismissed the bill of complaint, and granted the relief prayed for in the cross bill. From that decree, Mrs. Figeuroa appealed.

The lots in question were sold to the State on April 4, 1933 for delinquent taxes for the year 1932. The description of the lots appeared on the assessment roll under the general heading "Ocean Springs," and were assessed in the name of Charles N. and Ida L. Michael as follows: "All lots 13, 14 & part of Lot 15, Blk. 35 per D. B. 58, pages 86, 87, Sec. 30, T. 7, R. 8."

On June 16, 1941, Iola Y. Davidson obtained the patent from the State. The description therein was the same as appeared on the assessment roll except that it did not state that the lots were in Ocean Springs. On August 25, 1941, Iola Y. Davidson conveyed the lots to Mrs. Figeuroa, and it is through this conveyance and the patent that Mrs. Figeuroa claims. The appellees, Mrs. Eleanor Bradford Lemon and J. K. Lemon, claim through a quitclaim deed of date of February 8, 1940, from Charles N. and Ida L. Michael, who were the owners at the time of the sale.

The tax patent described the lots as being in Section 30, and makes reference to D. B., meaning deed book 58, pp. 86 and 87.

The land, which is claimed by the appellant, is in fact in Section 37 instead of Section 30. Both of these sections contained less than the usual 640 acres, but they were established by the governmental survey. Section 37 is known as the Widow LaFontaine Claim Section, contains 236.95 acres and is west of Section 30, which contains 205.92 acres. The confusion seems to have arisen from a map said to have been made by N. Culmseig in 1854, when he simply lumped the sections together. This map was neither official nor of record.

The case of Goff v. Avent, 122 Miss. 86, 84 So. 134, seems to be directly in point. Goff sought to cancel the claim of Avent to certain land in Section 42, Township 1 South, Range 8 West. He deraigned his title from Daniel Greene. Greene was occupying his tract when the government acquired the territory; and it recognized his claim and designated his land as Section 42. There were other claimants, and the government did likewise as to them, with the result that the township was divided into 47 instead of 36 sections. Section 42 would have embraced and coincided with the NW¼ of Section 27, the S½ of Section 22, and the SW¼ of Section 23, if the township had been divided into 36 regular sections. In the conveyances under which Goff obtained title, the lands were described as being in Sections 22, 23, and 27, as above described, instead of Section 42. The bill alleged that it was the custom of landowners in that vicinity to describe the lands in the irregular sections by what would have been the proper description thereof, if the township had been divided into 36 regular sections. The Court said that: "The complainant has failed to show any title in himself, and this he must do before he can question the title of the defendant." The Court further said: "The land in controversy is not embraced in the

description of the land conveyed in the deeds through which the complainant claims; for, where land is described in a conveyance by sectional numbers according to the government's survey thereof, the land thereby conveyed is that only which is situated within the designated sections as surveyed and platted by the government; the original corners and lines thereof established by the government being their true and only boundaries. That the parties to these deeds may have intended thereby to convey land that would have been included in the designated sections had they been of the regulation size can avail the complainant nothing; for when the meaning of language is to be determined by the court the intent of the parties, expressed in the words they had used, must govern.''

On a re-trial of this case, Goff v. Avent, 129 Miss. 782, 93 So. 193, again the Court said that ''the deeds through which the appellant claims convey no title, but, according to the allegations of the amended bill, he has acquired title to the land by adverse possession.''

Besides, the deed reference, both in the assessment and in the patent is erroneous. The land which is described in the deed reference is different land entirely, and is located about 350 feet southeast of the property here involved.

■■■ ■ It is apparent, therefore, that the appellant acquired no title under the tax patent to the land which she now claims for the following reasons: (1) The patent shows the lots to be in Section 30 when they are actually in Section 37; (2) the deed reference therein describes entirely different land; and (3) except by the erroneous deed reference, the lots are not shown to be in the town of Ocean Springs. The appellant, therefore, failed to show title in her.

From which it follows that the decree of the court below was correct and must be, and is, affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Holmes,* and *Ethridge, JJ.,* concur.

---

## ON SUGGESTION OF ERROR

February 28, 1955                    78 So. 2d 342

ROBERDS, P. J.

Appellant expresses concern as to the effect upon land titles in Ocean Springs of our statement in the original opinion that the Culmseig map had not been adopted as the official map of that municipality. That result does not follow. The opinion did not, and does not, hold that titles may not pass by descriptions in accordance with the Culmseig survey provided proper reference is made to that survey. Conceding the practical adoption of that map by the officials and citizens, yet the description here involved does not identify the lots according to that survey.

We have considered the other points raised on the Suggestion of Error but do not think they are well taken.

Suggestion of error overruled.

*Hall, Lee, Holmes* and *Ethridge, JJ.,* concur.