SALMEN BRICK & LUMBER COMPANY, LTD., et al. v.
WILLIAMS, et al.

In Banc. Jan. 22, 1951.

No. 37769 (50 So. (2d) 130)

McGehee, C. J. and **Alexander, J.**, dissenting.

**Morse & Morse,** and **Wallace, Greaves & Wallace,** for appellants.

H. H. Parker, and Hall & Callender, for appellees.

Ethridge, C.

This case involves a situation where a grantor, who had property conveyed to it with a one-half mineral exception, subsequently itself conveyed the property, using the same language which was used for the original mineral exception. The question is whether, under the facts to be presently described, the second grantor conveyed exactly what it received, or retained for itself the remaining one-half of the minerals.

This case is a consolidation by agreement of counsel of two separate appeals from final decrees of the chancery court of Pearl River County, Mississippi, adjudicating the title to one-half of the minerals in separate tracts of land. The deeds under which the parties claim are the same, with a common source of title, and the subject-matter and issues are identical and will be so treated in this opinion. In one of these actions Mrs. Trinity Tourne Williams, Mrs. J. C. Swartzwelder, and the Shell Oil Company filed their bill of complaint against Salmen Brick and Lumber Company, Ltd., and Raymond

F. Salmen, and simultaneously therewith G. H. Williams, Ed Frierson, and the Shell Oil Company filed their bill against the same parties.

In 1922 the Edward Hines Yellow Pine Trustees were the owners of the lands in question situated in Pearl River County, and on April 10, 1922, the said trustees conveyed certain lands by quitclaim deed to the Salmen Brick and Lumber Company, a corporation. At the end of this deed was the following clause: "Reserving forever from this conveyance, unto the Grantors, their successors, heirs and assigns, one-half of all oil, minerals or gases that may be on, in or under said lands or any part thereof, with the right to enter on said lands at any time, to explore for and remove such oils, minerals or gases, either from or under said lands or any adjoining or contiguous lands, in any manner and with any instrumentality of any and every kind and description that may be found necessary for the direct or indirect use and enjoyment of the estate so reserved; any entry or operation upon such lands, however, is to be made and carried on in such a manner as not to prevent or unreasonably interfere with the work and operation on said lands of the grantee, its successors and assigns, this reservation includes the right to remove oils, minerals, or gases that may be on, in or under adjoining lands, either belonging to the grantors herein, or in which they have reserved oil, mineral, or gas rights over the lands hereby conveyed, including all necessary rights of way on, or under the surface for such pipe line or pipe lines as may be necessary." This deed was filed for record on June 8, 1922.

On March 29, 1926, the Salmen Brick and Lumber Company conveyed the same and other lands by general warranty deed to the Williams Yellow Pine Company, a corporation. The deed conveyed a large amount of land, including several thousand acres not affected by the 1922 deed. After the "convey and warrant" clause, it conveyed to the grantees all of the timber on certain

described lands, and then had the following clause: "also the following described lands in fee simple, to wit: . . ." Following that was a description of several thousand acres not covered in the 1922 deed, and also all of the lands covered by the 1922 deed. Following those descriptions was the following clause: "reserving, however, from that conveyance as to the lands situated in" (here describing exactly only the lands conveyed in the 1922 deed); and following which was this clause: "unto the grantors, their successors, heirs and assigns, one half of all oil, minerals or gases that may be on, in or under said lands or any part thereof, with the right to enter on said lands at any time, to explore for and remove such oils, minerals or gases, either from or under said lands or any adjoining or contiguous lands, in any manner and with any instrumentality of any and every kind and description that may be found for the direct or indirect use and enjoyment of the estate so reserved; any entry or operation upon such lands, however, is to be made and carried on in such a manner as not to prevent or unreasonably interfere with the work and operation on said lands of the grantee, its successors and assigns; this reservation includes the right to remove oils, minerals, or gases that may be on, in or under adjoining lands, either belonging to the grantors herein, or in which they have reserved oil, mineral, or gas rights over the lands hereby conveyed, including all necessary rights of way on, or under the surface for such pipe line or pipe lines as may be necessary." This deed was filed for recordation two days after its execution.

In 1948 the Salmen Company, one of defendants below and appellants here, executed a deed conveying to Raymond F. Salmen, one of the defendants below and appellants here, a one-fourth interest in the minerals in these lands. From 1940 to 1944, appellees, the complainants below, claiming under the Williams Yellow Pine Company, executed various mineral deeds and leases on these lands. In 1949 appellees instituted the present actions

against appellants in the chancery court of Pearl River County. The bill of complaint set up the foregoing facts and prayed for a removal of the clouds asserted by appellants, cancellation of appellants' claims to one-half of the minerals, and for a confirmation and quieting of appellees' title thereto. The answer of appellants denied that the effect of the 1926 deed was to convey to the Williams Company one-half of the minerals. The final decrees in the chancery court cancelled any claims asserted by appellants, claiming under the Salmen Company, to the one-half mineral interest conveyed in 1922 to the Salmen Company, and subsequently conveyed to the Williams Company, and adjudicated that appellees, claiming under the latter Company, were the owners of the one-half mineral interest.

The particular issue is the effect of the "reservation" or exception clause in the second deed of 1926. We hold that it merely described the interest owned by the Salmen Company, was designed to protect the grantor's warranty, the grantee therein received all of the minerals (one-half) owned by the grantor, and affirm the Chancery Court's decrees.

The 1926 deed considered alone unambiguously conveyed the surface and one-half of the minerals to the grantee, the Williams Yellow Pine Company. It conveyed by general warranty the "fee simple" title, reserving one-half of the minerals. That deed in no way indicates that the grantor owned only one-half of the minerals, and on its face it vested in appellees' predecessor in title, the Williams Company, one-half of the minerals. Yet appellants say that the grantor therein failed to convey what it warranted it was conveying, because under the precedent exception in the Hines Trustees, the grantor, Salmen Company, had only one-half of the minerals when the deed was executed. But there is no ambiguity on the face of the 1926 deed; it conveyed to the Williams Company one-half of the minerals.

Hence the ambiguity, if any, arises when appellants undertake to show (a) that, as a result of the 1922 deed, the Salmen Company owned only one-half minerals in 1926, and (b) that the "reservation" in the 1926 deed is an additional exception of the remaining one-half of the minerals. In order to ascertain what effect these two deeds of 1922 and 1926 have when considered together as items in the chain of title, it is necessary to examine their various terms, and the circumstances at the time of their executions. Moreover, whether the 1926 deed is ambiguous, and if so in what respect it is ambiguous, is only one circumstance of many in determining its effect. The objective is to consider both deeds together and to ascertain the intent of the parties as evidenced by the terms of the instruments. The "ambiguity" test is helpful only in determining whether to admit extrinsic evidence. The effect of these deeds is the same whether they are designated as unambiguous, not requiring evidence other than the terms of the instruments, or ambiguous, permitting such extrinsic evidence.

In Richardson v. Moore, 1945, 198 Miss. 741, 22 So. (2d) 494, 495, the Court had before it a question of the construction of certain mineral exceptions, and there outlined several principles of construction of contracts which are applicable to the present case. They are: "(1) the deed must be read in the light of the circumstances surrounding the parties when it was executed; (2) that the construction should be upon the entire instrument, and each word and clause therein should be reconciled and given a meaning, if that can be reasonably done; (3) that the main document and that to which it refers must be construed together; (4) that if the wording of the deed is ambiguous, the practical construction placed thereon by the parties will have much weight in determining the meaning; and (5) that in case the deed is ambiguous, and subject to two possible constructions, one more favorable to the grantee, and the

other more favorable to the grantor, that construction favorable to the grantee will be adopted."

Several significant facts are observable from the terms of these two deeds. They are circumstances which indicate the intention of the parties in 1926 to convey to the Williams Company one-half of the minerals. The "reservation" or more properly exception clause in the 1926 deed is exactly the same as that in the 1922 deed, with the exception of the immaterial omission of the adjective "necessary" in the 1926 instrument. The exception clause in the 1922 deed reserved "unto the grantors" one-half of the minerals. The trustees were the grantors therein. In the 1926 instrument, the plural of "grantors" is retained, although the conveyance is made by a singular corporation, the Salmen Company. In Fatherree v. McCormick, 1945, 199 Miss. 248, 24 So. (2d) 724, 725, the Court pointed out that "The fact that the language 'less and except one-half of all mineral rights' is part of the description as borrowed from the Federal Land Bank's deed weighs heavily against appellant". That same opinion pointed out that the circumstance of the exception being in a general warranty deed is a relevant factor. In the principal case not only was the deed a general warranty, but it expressly conveyed the "fee simple" title in the lands. Another circumstance which indicates that the 1926 exception was designed only to protect the warranty of the Salmen Company is that in that deed the grantor conveyed to the Williams Company several thousand acres of land in addition to the acreage which it had obtained from the Hines Trustees. The exception of one-half minerals in the 1926 deed was restricted only to the acreage which the grantor had previously obtained from the Hines Trustees. The Salmen Company made no effort to reserve any minerals out of the tracts in which it had a full mineral interest, and we must assume it had such an interest in the light of its general warranty. A some-

what similar circumstance was noted also by the Court in the Fatherree case.

When the foregoing facts, appearing on the face of these deeds, are considered in connection with the express terms of the 1926 instrument, which standing alone evidenced an intent to convey one-half of the minerals to the grantee, we think that the effect of the 1926 deed was to convey to the Williams Company exactly what the Salmen Company had received from the Hines Trustees. It is true that the 1926 deed refers to a reservation "unto the grantors . . .", but that fact must be considered along with these other circumstances, including the general warranty, in determining the effect of that instrument.

Moreover, this result is in accord with analogous decisions from Mississippi and Texas. Richardson v. Moore, supra, reaches the same result but the exception in the second deed was more clear. Fatherree v. McCormick, supra, involved a situation where the Federal Land Bank had conveyed certain lands to Fatherree and Skelton in 1937, excepting one-half of all minerals in itself. In 1938 Fatherree, who had received a one-fourth mineral interest under the 1937 deed, conveyed to McCormick my "undivided interest in the lands" and, after describing it, "less and except one-half of all mineral rights". The Court held that the effect of this second deed was to convey to the grantee Fatherree's entire one-fourth mineral interest. As stated above, the Court considered various circumstances apparent on the face of the deed. The exception in the second deed of one-half of the minerals was more consistent with the construction of it as being only a reference to the exception in the Bank than of an additional exception of one-half of Fatherree's one-fourth. The Court held that it was a description of the Bank's interest, and was designed to protect the grantor's warranty. Fatherree had conveyed all of his interest in the minerals. He was only describing the extent of his undivided interest. The principle

of that decision is in accord with that applied here. See 18 Miss. L. J. 250; Long-Bell Pet. Co. v. Tritico, 1949, 216 La. 426, 43 So. (2d) 782.

In 1934, the Texas Court had a somewhat similar problem. Klein v. Humble Oil & Refining Co., Tex. Civ. App. 1934, 67 S. W. (2d) 911, affirmed on this point by the Supreme Court of Texas, 1935, 126 Tex. 450, 86 S. W. (2d) 1077, 1078. In 1928 Stein conveyed to Klein sixty acres of land by warranty deed, and the deed provided that " 'Grantors, herein, however, reserve for themselves, their heirs and assigns, one-eighth (⅛) of all mineral rights in and under Ten (10) acres of land . . ..' " Two months later Klein by general warranty deed conveyed the sixty acres to Baker. That deed contained the following provision:

" 'There is however excepted from this conveyance ⅛ of all mineral rights in and under Ten acres of land running north and south of the east end of said 60 acres, and it is understood that if no production of oil is had on said 10 acres within a period of Twenty years from May 29, 1928, then this reservation shall lapse. Also understood that the owner of said rights is not to participate in any oil lease or rental bonuses that may be paid for any lease, and have no interest in any future oil and gas lease.'

" 'The property herein conveyed is the same conveyed to us by Robert Stein and wife by deed dated May 29, 1928, and recorded in Guadalupe County, Deed Record Book 97, p. 398.' "

The Texas Court of Civil Appeals held that when considered alone the second deed purported to convey a fee simple title, excepting only a one-eighth mineral interest; that Klein's exception was used to protect his warranty as against Stein's one-eighth exception, and that it simply described Stein's interest. Otherwise, Baker received under the second deed the entire mineral interest. This was affirmed by the Supreme Court of Texas, which said: "We are in full agreement with that hold-

ing, and do not deem it necessary or desirable to enter into another discussion of that phase of the case.'' See also 14 Tex. L. Rev. 564; 3 Summers Oil & Gas, p. 481, note.

The result in the Klein case was followed in Peavy-Moore Lbr. Co. v. Duhig, Tex. Civ. App. 1938, 119 S. W. (2d) 688, affirmed in Duhig v. Peavy-Moore Lbr. Co., 1940, 135 Tex. 503, 144 S. W. (2d) 878. In 1907, Gilmer and Stark by general warranty deed conveyed a tract of land to Talbot and Duhig, providing "It is further agreed and understood that an undivided one-half (½) of the minerals of whatever nature and kind is hereby reserved . . .." Subsequently Duhig acquired Talbot's interest, and in 1912 by general warranty deed conveyed the property to Miller-Link Lumber Company. That deed provided as follows: "But it is expressly agreed and stipulated that the Grantor herein retains an undivided one-half ½ interest in and to all the mineral rights or minerals of whatever nature or description in and on said land." The trial court held that since the Lumber Company knew that Gilmer and Stark had retained a one-half interest, and Duhig had done the same, the second grantees acquired no interest in the minerals. The Court of Civil Appeals said that:

"The answer to this contention is that Duhig did not so write his deed. . . .

"1st. The deed by its express terms purported to convey all the interest in the land except the reserved one-half interest in the minerals. If the theory of the judgment be accepted, then the granting clause, to the extent that it purported to convey an interest in the mineral rights, must be destroyed; the following proposition from 14 Tex. Jur. 915, denies that construction: 'A sound rule of construction requires an interpretation under which the deed will be valid and operative in preference to one which will nullify it.'

"2nd. If there is any ambiguity in the deed, it must be resolved in favor of Miller-Link Lumber Company.

Duhig owned a half interest in the mineral rights; he purported to convey a half interest in the mineral rights; it was necessary that he reserve or 'retain' a half interest in the mineral rights to protect his warranty. The presumption is that he was dealing in good faith with his grantee, and had the right and power to convey, and did convey the interest covered by the language of his deed. Supporting this conclusion we quote the following rule from 14 Tex. Jur. 916:

" 'The language of a deed is the language of the grantor, and if there is any doubt as to its construction, it should be resolved against him.' "

The Court then said: "When the Duhig deed is construed by its own language it is not ambiguous. It purported to grant to Miller-Link Lumber Company an absolute fee simple title to all interest in the land except a one-half interest in the minerals. This rule must be given effect. To accept the theory of the judgment, Duhig's deed conveyed only the surface rights in the land, when the very language of the granting clause, construed in connection with the reservation, is clearly to the effect that Duhig was conveying to Miller-Link Lumber Company an undivided one-half interest in the minerals."

It is noted that the second exception clause, somewhat similar to the one now under consideration, provided that "the grantor herein retains an undivided one-half interest" in the minerals. The above decision held, as do we, that such a provision must be construed along with all of the other relevant factors in the instruments, and that it alone cannot control what is otherwise manifestly the intent of the parties ascertained from the express terms of the two deeds.

The Supreme Court of Texas affirmed the decision of the Court of Civil Appeals. Its affirmance, however, was based upon "the application of a well settled principle of estoppel". The general warranty in the deed extended to the entire fee-simple title except one-half of

the minerals. Assuming that Duhig had reserved the remaining one-half mineral interest and that the grantee Lumber Company acquired only the surface estate, the warranty was breached at the time of execution of the deed. Applying a principle similar to that under the after-acquired property doctrine, the Texas Court held that Duhig was estopped to assert title to one-half of the minerals in breach of his warranty.

The basis of the Texas Supreme Court's decision is consistent with the principles of equitable estoppel, but the facts in the Duhig case did not involve such additional circumstances as exist in the case now on appeal, and accordingly we do not find it necessary to pass upon the application of the estoppel test to the present facts. The reasoning of the Texas Supreme Court in the Klein case and of the Court of Civil Appeals in the Duhig case is in accord with the decision in the Fatherree case. And the proposition therein applied governs the result in the present case.

On the basis of the foregoing principles and decisions, the decrees of the chancery court are hereby affirmed.

Affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated the case is affirmed.

**Hall, J.**, took no part in the consideration or decision of this case.

**Alexander, J.** (dissenting).

The difficulties of this case cluster about the tendency to look through words rather than at them. It is striking and significant with what readiness both parties agree that in the deed from the Edward Hines Yellow Pine Trustees to appellant the words ''reserving forever from

this conveyance unto the grantors . . . one-half of all oil mineral or gases . . .'', mean that the grantors reserved unto themselves one-half of the existing minerals. This is of course because that is what this grantor wrote in its deed and elemental knowledge detects no need of translation or construction. There is no need to scourge these forthright words to make them cry aloud in repudiation. Above all, the reason for complete accord here is that they have always meant that this grantor, and every grantor who employs them, reserves unto himself one-half of the possessed minerals.

Now this appellee, aware of the plain import of this language, adopts it, and at once all adversely affected forage about in the remote shadows of plain words for scraps of ambiguity so as to confront them with an accusing hypocrisy. In this search all the resourceful forces of doubt are conscripted to the end that the solid structure of simple terms may be made transparent, and that an assumed and contrary intent, theretofore successfully and traditionally eclipsed, may be examined.

If there is ambiguity in language, there is set the stage for construction, Cummings v. Midstates Oil Corporation, 193 Miss. 675, 9 So. (2d) 648, but if there is no ambiguity, courts look solely to the language used in the instrument. Sumter Lbr. Co., Inc. v. Skipper, 183 Miss. 595, 184 So. 296, 835.

As stated in Gaston v. Mitchell, 192 Miss. 452, 458, 4 So. (2d) 892, 893, 6 So. (2d) 318, ''Ambiguity may not be created in order to make available rules of construction. Nor may courts seek out an intent in order to judge what was said, but rather must they judge what was meant by what was said.''

In Federal Land Bank v. Cooper, 190 Miss. 490, 200 So. 729, 732, the language ''One-half interest in all minerals is reserved to the Grantor'' was held to mean just what it said. The grantor reserved and held back for itself one-half of all the minerals.

In all of the cases cited to support a contrary view, there was at least superficial ambiguity. In Cook v. Farley, 195 Miss. 638, 15 So. (2d) 352, 353, there was no expressed reservation, but a mere exception from the lands described of such minerals as "the grantors hereto have promised to convey to . . . Cook". This was not a reservation in word or intent, but the reason for exception and exclusion of the minerals was set out in the conveyance.

In Fatherree v. McCormick, 199 Miss. 248, 24 So. (2d) 724, 725, it was controlling that the grantor "excepted" from the calls of the conveyance a greater interest than he possessed. Yet, it was there stated: "To give the exception any other character it would have to be so amended or otherwise by simple and clear expression enlarged to indicate that there is a reservation of one-half of the minerals owned by the grantor." In the case at bar, there was simple and clear expression that there was "reserved unto the grantor(s)" such interest as the appellant owned.

This distinction clearly appears in Richardson v. Moore, 198 Miss. 741, 22 So. (2d) 494, 495, where the grantor conveyed to Richardson certain lands "Subject, however, to any mineral or oil rights, if any such exist, belonging to any former owner of said land other than this grantor." In the chain of title was a precedent deed which stated that "The fee herein is subject to mineral and oil rights, if any, now of record and not owned by the grantors herein . . ."

In Klein v. Humble Oil Co., Tex. Civ. App., 67 S. W. (2d) 911, affirmed 126 Tex. 450, 86 S. W. (2d) 1077, 1078, the language used was "There is however excepted from this conveyance ⅛ of all mineral rights . . ."

While it is true that reservations and exceptions are often used interchangeably, the latter is the term exposed to ambiguity. One may except an interest which he does not own, but he can not reserve an interest which he does not have. Concededly a purported reservation may

obviously be found to be a mere exclusion from a grant. But, as suggested in Fatherree v. McCormick, supra, an addition that the reservation is by and "unto the grantor" himself of an interest of which he is possessed, ought to remove the language from exposure to those procedures which divest plain words of their meaning and distort them into conformity with a supposed intent.

In Peavy-Moore Lbr. Company v. Duhig, Tex. Civ. App., 119 S. W. (2d) 688, affirmed in 135 Tex. 503, 144 S. W. (2d) 878, it was deemed important that the grantor had cast his conveyance in the form of a warranty. The court found the language by which he "retained an undivided onehalf ½ interest in and to all the mineral rights . . . on said land" was less important than the fact that by the warranty he had purported to convey all the land except that interest which had theretofore been reserved. So that the implications of a warranty were permitted to override clear expression. I am unable to find support in a theory by which a court seeks gratuitously to save a grantor against an anticipated suit for breach of warranty. A warranty does not effect the conveyance. Title is acquired by the conveyance and guaranteed by the warranty. Nor is a deed void which subjects the grantor to a possible suit to enforce the warranty or for damages.

The inevitable result of the Court's conclusion is that a grantor who owns all minerals may reserve unto himself one-half, but if he owns only one-half, he must convey it with his warranty.

Is it not possible that appellant intended to reserve unto itself the mineral interest which it owned? It had a right to do so. If such was its purpose, it is unjust to thrust upon it a construction which denies to it such right. It certainly used language adequate to this end. What else should it have done? Under what duty do we construe the words as an exception from the warranty, rather than as a reservation unto the grantor?

As stated, we may not speculate upon a hidden intent until we have robbed the words of their unambiguous

import. In all the cases cited herein, ambiguity was present. In none of them was there an unequivocal reservation unto the grantor of an interest which he then owned.

It is important to keep uppermost in mind that this is not a suit for reformation, and there is no cross-bill by appellees. It could be true that the reservation was inadvertent and unintended. But here no mistake or fraud is alleged or shown. There was no testimony adduced. The record is documentary and intent is sought out by the detective processes of deduction. Yet, the ticket of admission to the arena of construction is ambiguity. To set out at once to create ambiguity is to reach a predetermined conclusion first and later to seek for reason and justification.

In this sort of action, we ought to say to the appellant: We know what you meant, because we know what you said. However, we are saying to it: Regardless of what you said, we think it best to take your reserved half mineral interest and give it to appellees because it is better for you to surrender this interest than that you be exposed to embarrassment or litigation. It should be kept in mind that there is no such thing as a breach of warranty *in vacuo*. It must be declared upon and loss established.

All the circumstances which the Court assembled to support an intent at variance with the universal meaning of the words used would be relevant in a suit to reform the deed and rewrite it in language importing a mere exception. But in this form of action, they should be held at bay since the words are not to be construed but merely defined. By definition, "reservation" means a reservation and "unto the grantor" means unto the grantor.

Here again the answer to an inquiry as to what the grantor meant is what it said.

McGehee, C. J., joins in the foregoing dissent.