PAYNE, et al. *v.* CAMPBELL, et al.

No. 43094 June 1, 1964 164 So. 2d 780

228

*Mounger & Mounger,* Tylertown; *Robert B. Payne,* Dallas, Texas; *T. F. Badon,* Liberty, for appellants and cross-appellees.

*Joe D. Gordon,* Liberty; *Forrest B. Jackson, Bacon & Smith,* Jackson, for appellees and cross-appellants.

232

GILLESPIE, J.

On March 28, 1944, Joe V. Mullins and his wife, Dollie Mae Mullins, were the owners in fee simple of 307 acres of land in Amite County, and on that date executed to T. F. Hodge the following royalty deed:

"That Joe V. Mullins and wife, Dollie Mae Mullins, for and in consideration of the price and sum of TEN AND NO/100 ($10.00) DOLLARS and other valuable considerations, cash in hand paid by T. F. Hodge, has granted, bargained, sold and conveyed, and does by these presents grant, bargain, sell and convey, unto the said T. F. Hodge the mineral royalty interest hereinafter set out affecting and relating to the following described lands . . . . . . (description omitted) . . . .

"The royalty interests and rights herein sold, transferred and conveyed are:

"(a) One-half (1/2) of the whole of any oil, gas or other minerals, except sulphur, on and under and to be produced from said lands; delivery of said royalties to be made to the purchaser herein in the same manner as is provided for the delivery of royalties by any present or future mineral lease affecting said lands.

"(b) Twenty-five (25) cents per long ton for all sulphur produced from said lands, payments therefor to be made monthly for sulphur marketed.

"This sale and transfer is made and accepted subject to an oil, gas and mineral lease now affecting said lands, but the royalties hereinabove described shall be delivered and/or paid to the purchaser out of and deducted from the royalties reserved to the lessor in said lease. This sale and transfer, however, is not limited to royalties accruing under the lease presently affecting said lands, but the rights herein granted are and shall remain a charge and burden on the land herein described and binding on any future owners or lessees of said lands and, in the event of the termination of the present lease, the said royalties shall be delivered and/or

paid out of the whole of any oil, gas or other minerals produced from said lands by the owner, lessee or anyone else operating thereon.

"The grantor herein reserved the right to grant future leases affecting said lands so long as there shall be included therein, for the benefit of the grantee herein, the royalty rights herein conveyed; and the grantor further reserves the right to collect and retain all bonuses and rentals paid for or in connection with any future lease or accruing under the lease now outstanding.

"TO HAVE AND TO HOLD said royalty rights unto the said purchaser, forever; and the said grantor hereby agrees to warrant and forever defend said rights unto the said purchaser against any person whomsoever lawfully claiming or to claim the same."

On April 13, 1944, T. F. Hodge executed to Bryan W. Payne a royalty deed using the same form as the conveyance from Joe V. Mullins and wife to T. F. Hodge conveying "three-eights (3/8) of the whole of any oil, gas or other minerals," etc., under said lands. On May 31, 1945, Bryan W. Payne conveyed to Iowa Payne Oil Company "3/16 of the whole of any oil, gas and minerals," etc., under said lands. Appellant Bryan W. Payne was the president of Iowa Payne Oil Company, a corporation, which was subsequently dissolved and the interests it acquired under the deed from Bryan W. Payne on May 31, 1945, vested in the appellants, Bryan W. Payne, Robert B. Payne, L. C. Johnston, Mrs. R. Bruce Johnston, and Mrs. Clara Louise Hagge, stockholders of said corporation. On October 19, 1944, Bryan W. Payne conveyed to Gilbert S. Johnson, Jr., a one-half interest in the royalty acquired by the said Bryan W. Payne from T. F. Hodge on April 13, 1944. This interest was conveyed by Johnson to Saltmount Oil Company (now Midwest Oil Corporation) and there is no dispute concerning that interest.

None of the successors in title to T. F. Hodge except appellants make any claim inconsistent with appellees' contention that the deed from Joe V. Mullins and wife to T. F. Hodge actually conveyed a royalty interest of 1/2 of 1/8 of the whole of all oil, gas and other minerals produced from said lands.

The land itself and all of the right, title and interest of Joe V. Mullins and his wife, Dollie Mae Mullins, not conveyed to T. F. Hodge on March 28, 1944, is now owned by appellees, including the present lessee who is now operating producing oil wells on said lands.

This suit was filed when it was learned that appellants were claiming a royalty interest entitling them to share in the production of oil and gas from said lands to the extent of 3/16 of the whole. The complainants sought cancellation of the claims of appellants to any interest in the mineral estate exceeding 3/16 of 1/8 of the whole of all oil, gas and other minerals, except sulphur, produced from said lands.

When the aforesaid royalty deeds were executed there was outstanding of record a ten-year mineral lease executed by Joe V. Mullins and wife to E. G. Morehead dated February 9, 1943, which provided for the payment to lessors a royalty of 1/8 of the oil and gas produced. This lease was assigned to Gulf Refining Company and remained in force until it expired on February 9, 1953. The successors in title of Joe V. Mullins and his wife, Dollie Mae Mullins, executed an oil, gas and mineral lease dated September 22, 1958, to Harris G. Anderson providing for the payment of a 1/8 royalty of oil, gas and other minerals, except sulphur, and this lease was assigned to Pan American Petroleum Corporation on September 28, 1958. Said assignee and its assignees are now owners of said lease and have produced oil from said lands.

The usual royalty provided for in oil leases in Mississippi prior to and at the time of the execution of

the royalty deed from Joe V. Mullins and wife to T. F. Hodge on March 28, 1944, was a 1/8 of the whole of all oil, gas and other minerals, except sulphur. At that time the prevailing price being paid landowners per royalty acre in Amite County was $5 to $7 per acre. The amount paid by Hodge to Mullins for said royalty conveyance was $1,000, or $6.51 per acre, if the royalty deed is interpreted as conveying a 1/2 of 1/8 of the whole of the oil and gas produced from said lands. When Hodge sold the royalty interest to Bryan W. Payne which is here involved, the purchase price paid by Payne was $1,036.17, or approximately $9 per acre, if that deed is interpreted as conveying a royalty interest of 3/16 of 1/8 of the whole.

The chancellor entered a decree adjudging that the deed from Joe V. Mullins and wife to T. F. Hodge dated March 28, 1944, conveyed 1/2 of 1/8 royalty in the oil, gas and other minerals, except sulphur, in and under the lands involved; that the deed from T. F. Hodge to Bryan W. Payne dated April 13, 1944, conveyed 3/8 of 1/8 royalty in said minerals under said lands; and that Bryan W. Payne and the other appellants own together a royalty interest of 3/16 of 1/8 of the oil, gas and other minerals in, on, or under said lands, and all claims of appellants to royalties in excess thereof were cancelled as clouds upon the title of appellees.

The royalty deeds from Mullins to Hodge, from Hodge to Payne, and from Payne to Iowa Payne Oil Company were all on the same form, captioned "Royalty Deed." The form is in fact a typical non-participating royalty form in general use in the State of Mississippi. It states that "this sale and transfer is made and accepted subject to an oil, gas and mineral lease now affecting said lands, but the royalties hereinabove described shall be delivered and/or paid to the purchaser out of and deducted from the royalties reserved to the lessor in said lease." Subsequent provisions provide for future

leases by grantor "so long as there shall be included therein, for the benefit of the grantee herein, the royalty right herein conveyed; . . . ."

■■ A royalty acre is that part of the interest in the 1/8 of the oil produced from one acre. According to this definition of a royalty acre, if Mullins conveyed to Hodge 1/2 of the usual 1/8 royalty under the 307 acre tract, he conveyed 153.5 royalty acres; if Hodge conveyed to Payne 3/8 of the usual 1/8 royalty under said tract, he conveyed 115.125 royalty acres. If the deed to Hodge is interpreted as conveying a 1/2 of 1/8 royalty, and the subsequent deeds are construed likewise, the considerations for all of the transactions involving said royalty interest conform to the prevailing values in that area at that time. ■■ The chancellor had ample evidence upon which to base a finding that Hodge and his procuring agent Johnson intended to purchase from Mullins 1/2 of the usual 1/8 royalty under said tract of land. Hodge and Johnson so testified.

■■ Only one royalty was conveyed by the Mullins to Hodge and it was to be paid out of and deducted from the present or any future lease. It would be impossible to deduct a 1/2 royalty from the 1/8 royalty provided for in the then existing lease. The interpretation made by the trial court is reasonable, conforms to the manifest intention of the parties, the usages of the oil business, and avoids unreasonable results. 12 Am. Jur., Contracts, Sec. 250; Rubel v. Rubel, 221 Miss. 848, 75 So. 2d 59, 47 A.L.R. 2d 1410; Grandberry, et al v. Mortgage Bond & Trust Co., 159 Miss. 460, 132 So. 334; McCain v. Lamar Life Ins. Co., 178 Miss. 459, 172 So. 495; Citizens' Bank v. Frazier, 157 Miss. 298, 127 So. 716.

Appellants contend that the said royalty conveyances are plain and unambiguous and need no interpretation by the Court, and the royalty conveyed by Mullins to Hodge was stated as 1/2 of the whole of any oil, gas

and other minerals produced from the lands. This may be true if the conveyances were considered in a vacuum separate and apart from the lease referred to therein and without considering the circumstances of the parties and the subject matter. But interpretation is always necessary in order to apply words to external objects, things or facts. 12 Am. Jur., Contracts, Sec. 229, p. 753; Wigmore, 3rd ed., Sec. 2458; Williston on Contracts, Rev. Ed., Sec. 601. ██ █ The words of the conveyance should be considered in the context in which they are used. We are of the opinion that when the royalty conveyance from Mullins to Hodge is applied to the thing on which it operates, it is ambiguous. Therefore, evidence showing all the circumstances surrounding the transactions was admissible. Salmen Brick & Lumber Co. v. Williams, 210 Miss. 560, 50 So. 2d 130. If interpreted to convey a 1/2 of the whole of any oil and gas produced, it would be impossible to give it effect, it would not harmonize with prevailing values, and it would be contrary to the manifest intention of the parties. On the other hand if said conveyance is interpreted to mean a 1/2 of the 1/8 royalty, it is capable of being applied to the thing upon which it operates harmoniously and without any unreasonable or unfair result, and it would be in accord with the manifest intention of the parties as well as the usages of the oil business. As said in Sumter Lumber Co. v. Skipper, 183 Miss. 595, 184 So. 296, the Court should look to the subject matter embraced in the conveyance, to the particular situation of the parties who made the instrument, and to the general situation touching the subject matter, that is to say, to all the conditions surrounding the parties at the time of the execution of the instrument, and to what, as may be fairly assumed, they had in contemplation in respect to all such surrounding conditions. ██ █ When this is done the conclusion is inescapable that what the parties contemplated was a conveyance by the Mullins

to Hodge of 1/2 of the royalty under the existing or any future lease, or a 1/16 of the whole of oil, gas and other minerals produced from said lands. The same may be said of the conveyances from Hodge to Payne and from Payne to Iowa Payne Oil Company.

 Appellants assign as error the failure to sustain a plea of the statute of limitations based on Secs. 709, 710, Miss. Code 1942. They rely on Neal v. Teat, 240 Miss. 35, 126 So. 2d 124. In that case the Court held that a suit to set aside a deed creating a severed mineral interest was a suit for the recovery of land and the grantee could plead the statutes of limitations. The decision in that case was based on the premise that the holder of title to a severed mineral interest had constructive possession. It was there held that the statutes of limitation do not begin to run against a person who has (1) good title, and (2) actual or constructive possession, until an adverse entry has been made. It therefore follows that since appellants had neither title nor possession, and appellees had both, Neal v. Teat, supra, does not apply.

 Appellants assign as error the failure of the trial court to sustain their pleas of laches. The Court has held in a number of cases that laches is a matter for the sound discretion of the chancellor, and his decision will not be disturbed unless there is an abuse of discretion. Denkmann Lumber Co. v. Morgan, 219 Miss. 718, 69 So. 2d 803; Van Zandt v. First National Bank at Jackson, 220 Miss. 127, 70 So. 2d 327; Harris v. Bailey Avenue Park, 202 Miss. 776, 32 So. 2d 689; Arrington v. Masonite Corp., 213 Miss. 817, 58 So. 2d 10. It appears to us the chancellor was correct in rejecting the contention that appellees were guilty of laches.

 Appellants contend that Payne was an innocent purchaser for value without notice of the facts and circumstances surrounding the transaction. They point

out that the transaction was conducted by mail. We are of the opinion that the instruments themselves were sufficient to put Payne on notice. Each of the royalty conveyances involved in this case purported to convey interests in excess of the customary 1/8 royalty. Purchasers are charged with notice of all the instruments referred to in the deed involved. ■■ ■ Thus Payne was charged with notice of the 1/8 royalty provided in the lease. Adams v. Hill, 208 Miss. 341, 44 So. 2d 457. We find no reversible error and the decree is affirmed.

■■ ■ Appellees filed a cross-assignment of error contending that the lower court erred in not reforming the deed from Hodge to Payne. The trial court decreed the interest owned by appellants was as contended by appellees and cancelled any claim of appellants in excess thereof. This put the title at rest and there is no need to reform the deed.

Affirmed on direct and cross-appeal.

*Lee, C. J., and Ethridge, McElroy and Rodgers, JJ.,* concur.