Andrew H. HOWARD and Mrs. Inez Howard, Appellants,

v.

SUN OIL COMPANY, Appellee.

No. 25829.

United States Court of Appeals Fifth Circuit.

Dec. 3, 1968.

Rehearing En Banc Denied Jan. 15, 1969.

---

Michael R. Eubanks, Lumberton, Miss., for appellants.

E. M. Cage, Dallas, Tex., John T. Armstrong, Hazlehurst, Miss., for appellee.

Before DYER and SIMPSON, Circuit Judges, and CABOT, District Judge.

DYER, Circuit Judge:

Asserting legal title to ten acres of land through adverse possession, the Howards brought this action against Sun for trespass and wrongful conversion of oil taken by Sun under a lease to Sun from the record owners of the land, the Moody heirs. The District Court entered summary judgment for Sun, finding that the question of title to the land and oil thereunder had been settled between the record owners and the Howards, that no concealed fraud on the part of Sun had induced that settlement, and that in any event the Mississippi Limitation of Actions statute barred the suit. 294 F.Supp. 24. The Howards appeal and we affirm.

Some historical facts are necessary to pinpoint the issues on appeal. In 1920 Howard purchased some property on which to build a home. The following year he hired labor to construct a house, directing that it be built on a designated location on his property, and while he was away working, the house was built. Unfortunately, upon his return he discovered that it had erroneously been constructed upon land belonging to one Pierce.

Howard planned to move the house or purchase the land from Pierce, but about a year later Pierce sold this and other property to J. S. Moody, Sr. Shortly thereafter (in 1923 or 1924), Howard informed Moody of his dilemma, and Moody agreed that Howard's house might remain on the property without charge. Moody also indicated that some day he would execute a deed to Howard for the small tract of land where the house stood so that it would not have to be moved in the future, but, again unfortunately, Moody later died without doing so.

In 1942 the Moody heirs, the record fee owners, executed and delivered to Sun an oil, gas and mineral lease covering a large tract of land, including that occupied by Howard. In 1944 when Sun's surveyor discovered Howard's occupation of a small part of its leasehold tract, Sun made inquiry of Howard concerning the nature of his use and occupation and obtained an affidavit from him in which he disavowed any claim to the land in question and acknowledged that it belonged to the heirs of J. S. Moody, Sr.[1] There is no suggestion that

---

1. Howard's affidavit averred in pertinent part:

   "The land on which my house in which I have lived for the past 23 years is situated, does not belong to me, but said land belongs to the Heirs of J. S. Moody, deceased. * * * I have never owned or claimed to own the above

the affidavit was obtained through fraud or misrepresentation by Sun.

In September, 1945, consistently with Howard's 1944 affidavit, the Howards accepted and recorded a deed prepared by counsel for the Moody heirs, conveying to Howard the surface ten acres (where their homesite was located) together with one non-participating royalty acre, all subject to the 1942 oil lease to Sun. Expressly reserved in the deed were nine mineral acres of the oil, gas and minerals on and under the ten acres.[2] For aught that appears from the record, Sun had no representative or counsel present at the time the deed was executed and delivered to and accepted by the Howards.

In December, 1945, the Howards conveyed their one royalty acre to a Mrs. Lott by a deed which contained a defective description of the interest conveyed.

Sun drilled an oil well on the ten acres in question in 1947. When the well was brought in, but before making a distribution of the royalties, Sun, on January 21, 1948, obtained from all parties in interest an instrument known as a division order, which pooled their interests in the land and set forth the amount of royalty

mentioned tract of land on which my house and garden, etc. is now located, but I have held continuous possession of this land for the past 23 years, using it as my homestead. * * * I now exert no claim to said land because of the promise of J. S. Moody to deed same to me. After the death of J. S. Moody, Sr. in 1936 his heirs took possession of this property, but they have not unto this date made any request for me to move my house off of the said above mentioned small tract of land. I have never made any claim to this land, and I now know and agree that it does not belong to me, and I recognize it as belonging to the heirs of J. S. Moody, deceased. However, I do not want to be in such a position as to have to move my house off of this small tract of land, as it is all the home that I possess, and I am not financially able to tear down and reconstruct my home. I am now willing to execute any kind of paper to the heirs of J. S. Moody, deceased, conveying to them all my interest in and to this small tract of land in return for their executing papers that will assure me of the right to continue to use this land as my homestead so long as I live and so long as my wife lives. I have never been assessed with, or paid, any taxes on the above mentioned small tract of land which now belongs to the heirs of J. S. Moody, deceased."

2. The reservation in the deed appears in the Record at 24–25 as follows:

It is expressly understood and agreed that the grantors herein reserve unto themselves nine (9) mineral acres of the oil, gas and minerals in, on and under the above described lands, together with the right unto themselves and their assigns to enter into, upon, over and across said lands with any and all suitable, necessary or convenient teams, tools, laborers, equipment and appliances for the purpose of exploring for, mining, removing and marketing all of such said products from said lands, it being expressly understood that the grantors only convey unto the grantee herein along with the fee, or dirt of the above described land one royalty acre of minerals in, on and under the above described ten acres of land hereby conveyed, which said one royalty acre shall be and is a non-participating royalty acre, it being understood that this conveyance either of the dirt or fee, or the one royalty non-participating acre of oil, gas and minerals is subject to that certain oil, gas and mineral lease of the Sun Oil Company of date October 16, 1942, and now of record in Book 11 on page 111 of the Records of Oil and Gas Leases of Lamar County, Mississippi; further that the grantee herein shall not have the right to, nor shall he be a necessary party to any oil, gas or mineral lease which may be hereafter made by the grantors or their assigns as to the oil, gas and minerals in, on and under the dirt or fee herein conveyed, the grantors expressly reserving unto themselves the right to make any and all leases on said lands and to receive, collect and retain any all rentals, bonuses and delay rentals to be paid by any leasee on said lands, the grantee receiving under this deed only one non-participating royalty acre of oil, gas and minerals in, on and under the above lands with the right to collect, receive and retain the royalty on such said one royalty acre when and as any oil, gas or minerals are produced and marketed from said lands.

owned by each. From the production Sun was directed to make payments of the royalties to the parties in the proportions set out in the division order. The Howards joined in the execution of this instrument in which they acknowledged that they had no royalty interest in the property—Howard's royalty interest having been blocked out and initialed by both the Howards. On the same date, January 21, 1948, the Howards executed and delivered to Mrs. Lott a deed correcting the faulty description of the one royalty acre contained in their prior deed.

Thus by the end of 1948 the following had occurred: The Pierce land, upon which Howard's house erroneously had been constructed, was conveyed to Moody, who died before giving any record interest to the Howards. Moody's heirs then leased the oil, gas and mineral rights to Sun. Upon discovery of the Howards' possession, Sun procured an affidavit from Howard disavowing any past or present claim to the land. As a settlement, the Moody heirs then deeded the surface ten acres and one non-participating royalty acre to the Howards, reserving to themselves nine mineral acres, all subject to the oil lease to Sun. The Howards then deeded their royalty acre to Mrs. Lott, although the deed had a defective description. Then Sun drilled and struck oil. Before distributing any proceeds, Sun obtained from all parties (the heirs, the Howards and Mrs. Lott) a division order in which the Howards acknowledged that they had no royalty interest, and on the same day the Howards again deeded the one royalty acre to Mrs. Lott, this time correctly describing the interest.

The Howards did nothing from 1948 until 1967 when they retained a lawyer to handle a salt water damage claim. Apparently during the settlement of this matter the lawyer advised the Howards that they had owned the land in question and the oil thereunder in 1933 and that they had never been divested of their title. The Howards filed suit against Sun for $1,225,000 damages, alleging that the Howards were the owners of the land and that a representation had been made by Sun that if the Howards would accept a deed drawn by counsel for the Moody heirs Sun would pay the Howards $5,000 when a producing well was brought in, but if they did not accept the deed no well would be drilled. The complaint further alleged that the Howards accepted the deed, but after a producing well was completed Sun refused to pay the five thousand dollars. The Howards allegedly did nothing about it because they believed that the recordation of the deed terminated their oil rights.

Upon cross motions for summary judgment supported by affidavits the District Court held that, even if it be assumed that the Howards could have proved adverse possession prior to 1945, there was no genuine issue concerning the material fact which was dispositive of the case, that there was a settlement made between plaintiffs and the record owners of this property, and that Inez Howard participated therein. Furthermore, the court found nothing to show any fraud or concealed fraud by Sun in connection with the settlement deed of 1945 and concluded that in any event Howards' tort claim would have been barred by Mississippi's six year statute of limitations.[3]

We must admit to some difficulty in discerning just what the Howards rely upon for reversal. They first attempt to eliminate the effect of the 1945 settlement deed, beginning their imaginative argument with an extended and lengthy claim of ownership of the land through adverse possession. The Howards then seem to argue, although rather obliquely, that the settlement deed did not settle the dispute at all because it conveyed the surface estate and one non-participating royalty acre to the Howards who already

3. 1A Miss.Code Ann. § 722 (1942).

owned this by adverse possession, and reserved nine participating acres in the Moody heirs who couldn't make such a reservation since Howard already owned this by adverse possession. In essence, they argue that one cannot convey owned property to its owner nor reserve to one's self ownership in someone else's property.

■ The Howards' claim of ownership by adverse possession was assumed *arguendo* by the trial judge to have been established until the settlement deed was executed. The Howards' interpretation of the effect of the settlement deed requires a talismanic ability—now you have it, now you don't—that we neither have nor find persuasive. It would require us to disregard the rubric that the rules for the construction of deeds are designed to ascertain and carry out the intentions of the parties. Payne v. Campbell, 1964, 250 Miss. 227, 164 So.2d 780; Rogers v. Morgan, 1964, 250 Miss. 9, 164 So.2d 480; Ford v. Jones, 1956, 226 Miss. 716, 85 So.2d 215; Texas Gulf Producing Co. v. Griffith, 1953, 218 Miss. 109, 65 So.2d 447, 834; Salmen Brick & Lumber Co. v. Williams, 1951, 210 Miss. 560, 50 So.2d 130; Richardson v. Moore, 1945, 198 Miss. 741, 22 So.2d 494; Sumter Lumber Co. v. Skipper, 1938, 183 Miss. 595, 184 So. 296; Gulf & S. I. R. Co. v. Patten, 1938, 180 Miss. 756, 178 So. 468; Goff v. Avent, 1920, 122 Miss. 86, 84 So. 134. In gleaning that intent we think it significant that the settlement deed executed by the Moody heirs and accepted and recorded by the Howards in 1945 was entirely consistent with the facts set out in the Howards' 1944 affidavit. The intention of the parties to the deed is perfectly clear. It was to give to the Howards the assurance they desired that they would not be put off or have to remove their house from the land, and, at the same time, to prevent the Howards at any future time from making any claim of title adverse to the Moody heirs. By accepting the deed the Howards placed themselves in the Moody chain of title and thereafter held under the Moodys, not against them. The Howards' argu-

ment of ownership conveyed to owner, ownership retained by non-owner, is unimpressive. The deed, after all, was a *settlement* deed, and if anything the deed was a boon to the Howards.

The Howards attempt to make error appear from the trial judge's factfinding concerning the conveyance by the Howards to Mrs. Lott of a one acre non-participating royalty interest and his conclusion that the Howards, therefore, had no royalty interest in the property. The validity of the findings and conclusion is not attacked, nor could they be, but the Howards draw an unwarranted inference that the District Court's decision was based entirely upon "the erroneous effect of a division order and royalty transfer being executed." This is simply not so. This case was decided below precisely upon the basis of the clear and unambiguous settlement deed. We agree with the District Court that the division order, and the conveyance of one royalty acre by the Howards to Lott by a corrective deed given on the same day that the division order was executed, are further substantial evidence that the Howards were fully aware of their rights and neither had nor claimed any interest under the lease. The division order recited that the parties thereto were the owners of the minerals under the land and that they agreed to pool their interests in the land so that the royalties from production under the lease should be paid by Sun in the proportions agreed upon and set forth in the order. The Howards joined in the execution of this instrument and in it acknowledged the validity of the lease and that they were to receive nothing.

■ In an attempt to avoid the legal effect of the settlement deed and the defense of limitation, the Howards accuse Sun of concealed fraud by deceiving the Howards into mistakenly believing that the acceptance of the deed and its recordation terminated the Howards' rights to the oil. We have searched the record in vain to find any allegations or acts of specific fraud or concealment

on the part of Sun.[4] Facts and circumstances constituting charged fraud must be specifically demonstrated and cannot be presumed from vague allegations. McMahon v. McMahon, 1963, 247 Miss. 822, 157 So.2d 494. See also Jones v. Rogers, 1905, 85 Miss. 802, 38 So. 742, writ of error dismissed, 1909, 214 U.S. 196, 29 S.Ct. 635, 53 L.Ed. 965. The Howards had all of the possession information that was available, the instruments involved were spread upon the public records, and nothing was concealed by Sun. The only thing that the Howards now claim to have discovered after almost twenty years is that their lawyer advised them that they had some legal rights and some title to the land that they didn't know they had. Even if this advice had been sound, which it was not, the Howards' ignorance of their legal rights, or failure to seek legal advice, did not toll the statute of limitations. Mitchell v. Town of Magee, Miss. 1951, 51 So.2d 198.

In sum, we agree with the District Court that there is no genuine issue as to any material fact in this case. The Howards settled all claims that they might have asserted to the oil in the land. There is no showing of fraud or concealment. Even viewing the bare general allegations of fraud concerning the acceptance of the 1945 deed as sufficient, the Howards' claim is barred by the Mississippi statute of limitations.[5] The District Court therefore properly entered a summary judgment in favor of Sun. Ayers v. Davidson, 5 Cir. 1960, 285 F.2d 137.

Affirmed.

## ON PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

4. The Howards sue for over a million dollars, not for the five thousand dollars allegedly promised them for the execution of the settlement deed. They treat the promise as a fraudulent inducement yet they "have never claimed that the deed was concealed or that the deed is void." They, of course, could not now sue on an oral promise to pay five thousand dollars for it would have been barred long ago by the Mississippi three-year statute of limitations. 1A Miss.Code Ann. § 729, (1942).

