622 So.2d 291 (1993)
Delores BEDFORD and Mamie Ruth Bedford Halford
v.
George F. KRAVIS, Sole Trustee for the Raymond F. Kravis Trust, Gary N. Huey, Harold M. Huey, Ronnie L. Huey, Marilyn Ann Babington Barlow, Margie Babington Sullivan, H.R. Babington, Jr., Adobe Royalty, Inc., and Kenoil Corporation.
No. 89-CA-1114.
Supreme Court of Mississippi.
August 12, 1993.
Samuel M. Tumey, Liberty, W.J. Halford, Jr., Debbra Killen Halford, Halford & Halford, Meadville, for appellant.
Everette Truly, Truly Smith Latham & Kuehnle, Natchez, for appellee.
En banc.

ON PETITION FOR REHEARING
PITTMAN, Justice, for the Court:
The original opinion is withdrawn and this opinion is substituted therefor.
On March 3, 1986, Delores W. Bedford and Mamie Ruth Bedford Halford (hereinafter "Bedfords") filed a complaint for declaratory judgment and other relief seeking construction of documents of title, quieting and confirmation of title, accounting for proceeds of mineral production, and other equitable relief against the heirs and assigns of the grantee, N.B. Huey, of an instrument conveying certain mineral interests executed in 1944. The Bedfords later amended the complaint to include a request for reformation. Determining that the evidence offered by the Bedfords to reform the 1944 instrument was violative of the parol evidence rule, the chancellor found for the defendants. Aggrieved by the lower court's decision, the Bedfords appeal to this Court. Finding reversible error, this Court reverses and remands.

I.
In 1944, Thomas G. Bedford and wife, Delores Bedford, executed and delivered to N.B. Huey a document designated Mineral Right and Royalty Transfer utilizing a standard Form No. R-101 then currently in use conveying "1/2 interest in and to all of the oil, gas and other minerals of every *292 kind and character in, on or under that certain tract... ." The instrument also contained the following language typed after the land description:
Notwithstanding anything in this contract to the contrary the grantee waives all right and interest to share in any rentals due the grantor under any existing or future lease. The grantee further consents that the grantor may execute any lease hereafter without the grantee joining herein.
At the time of the conveyance, the property in question was subject to a lease in which a 1/8 royalty was reserved to the lessors.
N.B. Huey later executed and filed a Ratification and Rental Division Order containing the following language:
[W]hereas, it was the intention of Thomas G. Bedford and wife, Delores Bedford to convey a non-participating interest in deed dated August 22, 1944, in favor of undersigned, describing 1/2 interest in oil, gas and minerals in, on and under the above described land, reserving the right to execute further leases covering the entire mineral interest in said land and to receive bonuses therefor.
(emphasis added)
In 1984, the property was under a lease reserving 1/4 royalty to the lessors when the property was incorporated into a producing forty acre unit. The purchaser of the oil and gas production, defendant American Natural Crude Oil Acquisition, Inc., (hereinafter "ANCOA") being uncertain of the proper allocation of the royalty, paid 1/8 royalty to the Bedfords and placed 1/8 in escrow. Only 1/16 royalty is actually in dispute. The remaining 1/16 interest was suspended only because none of the holders of the severed royalty came forth to demand payment.
The Bedfords filed suit to establish title to the disputed 1/16 interest, asserting that the royalty conveyed was only equal to 1/2 of the royalty reserved in the lease current at the time of the conveyance, namely 1/2 of 1/8 (1/16). The defendants, however, argued that the interest conveyed was an ordinary mineral interest, less those rights reserved by the grantors, which implied that the royalty floated with the terms of each new lease.
Delores Bedford, Thomas Bedford's widow, and Mamie Ruth Bedford Halford, Thomas Bedford's daughter, each own 1/2 of Thomas Bedford's mineral interest in the property at issue. Kravis Trust, Kenoil Corp., Adobe Royalty, and the heirs of J.R. Babington, and the heirs of N.B. Huey were the only defendants that appeared at trial to defend.
ANCOA appeared in response to a subpoena stating that the funds were available for payment into the Court upon an Order to do so. Sun Exploration and Production appeared and disclaimed any interest in the property at issue, and waived further notice of proceedings. All other parties either defaulted or entered stipulations admitting to the schedule of interests set forth in the Complaint.
At trial, Delores Bedford testified that she was present at the time of the execution of the deed in question.[1] N.B. Huey and H.R. Babington, both local bankers, brought the deed to the Bedford home for signing. She testified that Webb Crecink, the county tax assessor, advised Mr. Bedford to sell a "non-participating interest" and that the quantum that was intended to be sold was 1/2 of the royalty reserved in the lease, or 1/2 of 1/8. Also, the consideration was $400 based on $5.00 per royalty acre for eighty royalty acres. According to Mrs. Bedford, she was familiar with the definition of "royalty" at the time the instrument was signed, and she equated royalty with a 1/8 reservation because "back in those days that's ... all anybody ever got... ."
Mrs. Bedford stated that she was not familiar with the term "bonus" in 1944. She thought that the term "rental" as used *293 in the conveyance was sufficient to include the money paid to a land owner for execution of a lease and that such a sum was ordinarily referred to by herself and others as "lease money." Mrs. Bedford further testified that five or six subsequent mineral leases had been executed since the conveyance in question and no demand had ever been made on her for any portion of bonus received on those leases.
Counsel for the defendants timely objected to Mrs. Bedford's testimony. The chancellor reserved his ruling on the objection. The defendants also objected to the admission of copies of subsequent leases referred to by Mrs. Bedford in her testimony.
The Bedfords also sought to introduce into evidence the Ratification and Rental Division Order executed by N.B. Huey on May 4, 1948, and filed on August 11, 1948, and a deposition taken in 1964 in Payne v. Campbell, 250 Miss. 227, 164 So.2d 780 (1964), for the purpose of establishing royalty prices in Southwest Mississippi at the time the deed was executed.
Counsel for the defendants timely objected to the admission of the Ratification and Rental Division Order and to the admission of the deposition. The chancellor reserved his ruling on the objection to the admission of the Ratification and Rental Division Order and sustained the objection to the admission of the deposition.
The chancellor took the admissibility of the Bedfords' evidence under advisement, and the defendants rested without presenting any evidence.
The chancellor held that the Bedfords were barred by the parol evidence rule from presenting evidence to show that bonus was intended to be reserved from the original conveyance, and in accordance with that ruling, all of the Bedfords' evidence in support of reformation was excluded. The chancellor held that the 1944 instrument was unambiguous and must be construed on its face. Since the Bedfords failed to meet the burden of proof as to reformation, the chancellor ruled that the conveyance at issue was a mineral interest less executive right and delay rental interest based on Thornhill v. System Fuels, Inc., 523 So.2d 983 (Miss. 1988). Thus, the quantum of royalty floated so as to accommodate the reservation in each new lease rather than remaining fixed.
The defendants were held to be entitled to the entire 1/8 royalty held in suspense. Prior default judgments against non-responding parties were also set aside. As a result of Sun Exploration's disclaimer, a naked bonus interest which otherwise would have belonged to it under the chancellor's ruling, revested in the Bedfords as holders of the executive right. All parties who had originally executed stipulations assenting to the claims set forward in the Complaint were released from said stipulations on Plaintiffs' motion and all unrepresented mineral and royalty owners were placed in the position of prevailing parties.

II.
The Bedfords contend that the lower court erred in excluding evidence presented in support of their claim for reformation to include "bonus" among the rights reserved in the original conveyance. Mrs. Bedford's testimony and the Ratification and Rental Division Order were offered in an attempt to prove that the Bedfords only intended to convey a royalty interest. In the 1944 conveyance, there was no mention of "bonus." Mrs. Bedford testified at trial that at the time of the conveyance she was not familiar with the term "bonus." She thought that "rentals" encompassed all monies paid in executing a lease. Furthermore, approximately five or six leases were executed in the past forty years and no one ever claimed any bonus.
The Bedfords also attempted to introduce the Ratification and Rental Division Order executed by N.B. Huey to demonstrate that Mr. Huey was also under the impression that the 1944 conveyance was intended to reserve bonus to the grantors. The lower court excluded all of this evidence under the parol evidence rule, and as a result, the Bedfords were unable to establish their claim of mutual mistake.
In Smalley v. Rogers, 232 Miss. 705, 100 So.2d 118 (1958), this Court stated:

*294 One of the assignments argued by the appellants is that the court erred in admitting parol evidence to show the intention of the parties to the deed as the deed was plain and unambiguous. The appellant cites numerous authorities to support his contention, however, these cases are not applicable in reformation proceedings.
"It is practically a universal rule that in suits to reform written instruments on the ground of fraud or mutual mistake, parol evidence is admissible to establish the fact of fraud or of a mistake and in what it consisted, and to show how the writing should be corrected in order to conform to the agreement or intention which the parties actually made or had, and this, even though the instrument in question is within the the [sic] statute of frauds. So far as the introduction of such proof may be said to violate the statute, it is immaterial whether it comes from the complainant or the respondent. The nature of the action is such that it is outside the field of operation of the parol-evidence rule. If this were not so, a rule adopted by the courts as a protection against fraud and false swearing would, as has been said in regard to the analogous rule known as the statute of frauds, become the instrument of the very fraud it was intended to prevent. Evidence of fraud or mistake is seldom found in the instrument itself, and unless parol evidence may be admitted for the purpose of procuring its reformation, the aggrieved party would have as little hope of redress in a court of equity as in a court of law.

"Generally, it may be said that any testimony which tends to prove the mistake alleged or the intention of the parties is admissible. A witness in a position to know may testify concerning the intention of the parties to an agreement, to the same effect as to any other fact." 45 Am.Jur., Reformation of Instruments, Section 113.
Smalley, 232 Miss. at 710-11, 100 So.2d at 119-20 (emphasis added).
In Thornhill v. System Fuels, Inc., 523 So.2d 983 (Miss. 1988), this Court dealt with the construction of the same type of instrument, Form R-101, as used in the case at hand.
The mineral deed in this case is on a form customarily used to convey a mineral estate with all appertaining rights as opposed to a royalty interest only. The only change made in the terms and conditions of the printed form is the typed insertion that the grantee would not receive bonuses or delay rentals from any oil and gas lease. Under conventional rules of construction, this appears a simple conveyance of an undivided one-half interest in all the minerals, with the grantor retaining the right to bonuses and delay rentals from oil and gas leases... . [I]t is well settled these rights could be separated without changing the character of the instrument from a mineral estate to a royalty interest only.
Also, under ordinary rules of construction, all that was not unequivocally and specifically reserved was conveyed by the granting clause.

Id. at 989 (emphasis added) (citations omitted).
The appellees contend that the 1944 instrument was not ambiguous on its face. In examining the language contained in the "four corners" of the document, it is clear that the grantors did not specifically reserve bonus in the 1944 instrument. The appellees contend that the dispute ends here.
N.B. Huey, however, in 1948, executed a document which clearly set out that it was the intention of the parties in executing the 1944 instrument that the grantors receive any bonus from leases.[2] This document was recorded in Franklin County. It is evident from this evidence that the parties thought the 1944 instrument was ambiguous and needed clarification. Even the chancellor noted that "[t]hese instruments *295 would present to any reasonable person a problem as to who owned what interest... ." After the 1948 Ratification instrument was filed, the Bedfords executed several leases, and no one claimed any right to bonus until almost 40 years later.
The appellees concede that parol evidence is admissible in a suit to reform an instrument where the suit is brought to correct a fraud or mutual mistake and the suit is between the original parties to the instrument or parties in privity thereto, except where the rights of bona fide purchasers without notice will be affected. Parker v. King, 235 Miss. 80, 108 So.2d 224 (1959). The appellees contend that they are bona fide purchasers for value without notice.
The 1948 Ratification instrument, however, was of record. In Florida Gas Exploration Co. v. Searcy, 385 So.2d 1293 (Miss. 1980), this Court in affirming the lower court's reformation of a deed stated:
The rule regarding notice was stated in Dead River Fishing & Hunting Club v. Stovall, 147 Miss. 385, 113 So. 336 (1927):
"A purchaser of land is charged with notice not only of every statement of fact made in the various conveyances constituting his chain of title, but he is also bound to take notice of and to fully explore and investigate all facts to which his attention may be directed by recitals in said conveyance contained. The duty is also imposed on him to examine all deeds and conveyances previously executed and placed of record by his grantor  either immediately or remote  if such deeds or conveyances in any way affect his title. And if in any such deed or conveyance there is contained any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of the title, then he is charged with notice of all those facts which could and would be disclosed by a diligent and careful investigation." 147 Miss. at 395-396, 113 So. at 337-338.

See also Sun Oil Company v. Broadhead, 323 So.2d 95 (Miss. 1975); Sunnybrook Children's Home, Inc. v. Dahlem, 265 So.2d 921 (Miss. 1972); and Smalley v. Rogers, 232 Miss. 705, 100 So.2d 118 (1958).
In Sunnybrook, this Court said:
"We have recognized the right to reform instruments not only against the original parties and their privies, but also against purchasers from them with notice of their rights... ." 265 So.2d at 925.
Searcy, 385 So.2d at 1296 (emphasis added). Otherwise, the appellees were charged with having notice under this state's law. Thus, their claim of being bona fide purchasers for value without notice fails. They clearly had notice through the 1948 Ratification instrument which was recorded. And as such, the appellant's testimony as to the intent of the parties at the execution of the deed in question, the subsequent leases referred to by appellant's testimony, and the Ratification and Rental Division Order of 1948 were admissible to show mutual mistake.[3]See Holliman v. Cherry & Associates, 569 So.2d 1139, 1145 (1990).
We distinguish the case of Pursue Energy Corp. v. Perkins, 558 So.2d 349 (Miss. 1990), from the case sub judice by noting that Pursue only dealt with the payment of mineral interest proceeds based on the original deed. Pursue held that the parol evidence rule barred admission of evidence outside the original instrument when that instrument was unambiguous within its "four corners." However, the parties in Pursue did not plead reformation or mutual mistake, as in the case sub judice. If mutual mistake or fraud is properly pled, prior oral representations or negotiations are admissible to prove the real intent of the contracting parties. Holliman, 569 So.2d at 1146.
The chancellor erred in refusing to allow the introduction of parol evidence. "[W]here parties contract for a particular result, and intend to effect it, and fail to accomplish it, even through ignorance or mistake of law, equity will effectuate the *296 intent of the parties." Hall v. State to Use of Lafayette County, 69 Miss. 529, 13 So. 38, 39 (1891). On remand, the chancellor should allow the introduction of parol evidence to determine the intent of the contracting parties.

III.
In view of our disposition of the issue of parol evidence, we do not reach the remaining issue of whether the instrument in question represented a mineral conveyance or a one-half of one-eighth royalty.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., SULLIVAN, BANKS, McRAE, ROBERTS and SMITH, JJ., concur.
NOTES
[1] The parties stipulated to the admission into evidence of a complex series of conveyances set out in detail in the Complaint.
[2] The 1948 Ratification instrument constitutes an exception to the hearsay rule. M.R.E. 803(15).
[3] The appellants properly pled mutual mistake in their complaint.